IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RASHAD C. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV. A. NO. 22-0050-KD-MU |
| | ) | |
| WARDEN ANTONIO MCCLAIN, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Rashad C. Lee, an Alabama prison inmate proceeding *pro se*, filed an action under 42 U.S.C. § 1983. Before the Court is Defendant Warden Antonio McClain's and Defendant Captain McNeal's' Motion for Summary Judgment (Doc. 49) and Plaintiff Lee's opposition thereto (Doc. 63). For the reasons discussed herein, Defendants' motion for summary judgment is **GRANTED**, **in part,** and **DENIED, in part**.

**1. Summary of Background and Allegations**[1]

Plaintiff Rashad Lee has been in the custody of the Alabama Department of Corrections (ADOC) for over 20 years, during which time he has been housed at multiple prisons in Alabama. This lawsuit stems from his confinement at Fountain Correctional Facility ("Fountain") in 2021-2022, but it has roots in his imprisonment at Fountain in 2016, when he was attacked by six inmates, two of whom were identified and validated as enemies. Following this 2016 attack, Lee sued correctional officials for

---

[1] Because Lee's operative complaint is signed under penalty of perjury (*see* Doc. 5 at 12), the Court will consider the factual allegations in the complaint in ruling on the motion for summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam). However, the undersigned notes the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

failing to protect him from the attack, despite knowledge that Lee had received threats of harm and feared for his safety. Thereafter, Lee was transferred from Fountain – only to return to the facility in 2021.

According to Lee, immediately upon his return to Fountain, on March 23, 2021, he was placed in A-Dorm, with a guy called "Red" who "hung out" with the guys that he had positively identified as assailants in 2016. Lee alleges that he and "Red" sat up the whole night "watching" each other. (Doc. 5 at 5-6). The next morning, March 24th, after informing officers of the incident, Lee was placed in protective custody and moved from Fountain's main facility to Fountain Annex ("the Annex") the following day. (*Id*. at 6).

While housed at the Annex, Lee maintains he told Warden McClain that he "personally knew some of the guys were still [at Fountain] that had been involved in the attack of [him] previously as [he] had seen them when escorted back over there to see the doctor." (*Id*. at 5). Lee also told Warden McClain about his encounter with "Red" on March 23, 2021, and communicated that "Red" "hung with the guys that [he] positively ID that stabbed [him] last time he was [at Fountain]", and Warden McClain "agreed that if [Lee] were to be sent back to the main facility general population [he'd] have problems." (*Id*. at 5).

Lee remained at the Annex until January 25, 2022, when he was transferred to Fountain's main facility, despite requesting protective custody and "begging" Captain McNeal not to send him to general population because he had "been stabbed and robbed the last time [he was in general population at Fountain]", Captain McNeal "just laughed and told [Lee] to get [his] shit and go to population." (*Id*. at 6). Before being moved, Lee was taken to the health care unit, where he told the nurse that he feared for

2

his life because of the attack that occurred in 2016. While in the health care unit, Lee also asked to see Warden McClain, but McClain did not come. Instead, Warden McClain sent a message through Captain McNeal that, "he had no talk for me!" (*Id.*). Lee was then placed in general population, in the dormitory known to be "run by" the Gangsta Disciples. Because Lee was not affiliated with the gang, he alleges he was not allowed to sleep on his assigned bed for the first two nights.

On the third morning, Lee alleges he was assaulted by two inmates in the bathroom. He claims the two inmates kicked him in the sides, stomped him in the back, and stated, "where's the money you owe?" (Doc. 5 at 6). Lee claims he showered and waited to see his mental health counselor to tell her what happened. Upon conveying the incident, the counselor contacted Lieutenant Smith and requested that Lee be placed in protective custody. According to Lee, when Lieutenant Smith requested protective custody for an inmate, Warden McClain came to the health care unit (where Lee was receiving a body chart) to see which inmate was involved, but when Warden McClain saw that it was Lee, "[h]e walked in looked at [Lee] turned and walked away said nothing." (*Id*. at 6). Thereafter, Lee was placed in protective custody in the segregation unit, where he alleges he was subjected to smoke and further alleges a generalized fear of being harmed. (Doc. 3 at 7-8; Doc. 5 at 7-9).

According to Lee, he is being held in the segregation unit, instead of being transferred, in retaliation for filing lawsuits against the state prisons and its correctional officers. He alleges, on February 10, 2022, he was told by a nondefendant warden,[2] "I'll

---

[2] Lee repeatedly uses the pronoun "she" when referencing the warden who spoke to him on February 10, 2022. (*See* Doc. 3 at 8-9). Accordingly, it is apparent that Lee is identifying someone other than Defendant Warden Antonio McClain.

3

learn to stop writing 'shit' to Montgomery on the FCC Administration when all of her orders comes from Montgomery and I am a troublemaker with my pen, in violation of my First Amendment rights. She told me I would soon learn to stop lieing[sic] on ADOC because they don't treat people like that but that after I sit back here in segregation some months because nobody wants to accept me because I file on the ADOC everywhere I go I'll learn to stop writing and do my time!" (Doc. 3 at 8-9). Lee claims that as a Level II security custody inmate, with no disciplinaries, he is only being held in a Level VI segregation unit because he threatened to file suit after he was assaulted in general population. (*Id*. at 9).

Lee filed this action on January 30, 2022, declaring fear for his life (Doc. 1). The operative complaint is the amended complaint he filed on February 25, 2022. (Doc. 5). In that complaint, he alleges that Defendants violated his Eighth Amendment rights by showing deliberate indifference to his health and safety by failing to protect him from a known risk. He also alleges that Defendants placed him back in the general population in retaliation for him filing other actions. He seeks compensatory and punitive damages in the amounts of $20,000 and $10,000, respectively.[3] (Doc. 5 at 12).

Defendants McClain and McNeal have answered the suit and filed a special report in support of their positions. (*See* Docs. 47, 48). In their special report, Defendants deny Lee's claim of deliberate indifference. (Doc. 48 at 7-8). Specifically, Defendant Warden McClain affirms by personal affidavit that he does not have any

---

[3] Lee also requested injunctive relief, including installation of fire sprinklers in the segregation unit's cells and the M-Dorm/Annex, an inspection by the state/federal fire marshal, and his immediate transfer for safety reasons. (Doc. 5). However, on or around March 18, 2022, Lee was transferred from Fountain. (Doc. 13). Consequently, his requests for injunctive relief were denied as moot by this Court's July 6, 2022 order. (See Doc. 29).

documentation to support that Lee was assaulted in the bathroom, nor that Lee had documented enemies at Fountain, nor that Lee ever previously expressed the "concerns or complaints" identified in this action. (Doc. 48-4 at 1).

Defendant Captain McNeal avers that Lee's move to general population on January 25, 2022, was precipitated by Lee's response to hearing that he was being transferred from the Annex to another facility. According to Captain McNeal, when Lee was informed by Sergeant Finch that he was being transferred and was instructed to collect his property from the Annex, Lee responded that if he was moved, he was going to escape. (*See* Docs. 48-1; 48-2). Based on Lee's statement that he was going to escape, Captain McNeal met with Lee in the health care unit to discuss his statement and then informed Lee that he would be housed in Fountain's main facility until further notice. (Doc. 48-2 at 1-2). Captain McNeal affirms that "Inmate Lee did state that he had enemies down the hallway due to a recent incident that occurred a long time ago. Captain McNeal stated to inmate Lee that he has no validated enemies in the main facility and from the last incident that occurred in the main facility all his enemies was[sic] validated and transferred from this facility." Lee was then reassigned from the Annex to general population. (Doc. 48-2 at 2).

The Court converted Defendants' Answer and Special Report into a motion for summary judgment. (Doc. 49). Lee responded to the motion with a discovery request for certain medical records (Doc. 52), which the Court granted (Doc. 53) and Defendants produced (Doc. 62). Lee filed an objection to the motion for summary judgment (Doc. 63), which the Court considers for purposes of this motion.

**II. Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

Defendants, as the parties seeking summary judgment, bear "the initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Plaintiff, the nonmoving party, fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Defendants are entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether Plaintiff has met his burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter .... Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (citation and internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-

6

moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Legal Analysis

**A. Deliberate Indifference**

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994). However, "a prison custodian is not the guarantor of a prisoner's safety", *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Prison officials must "take reasonable measures to guarantee the safety of the inmates", *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not...." *Farmer*, 511 U.S. at 838. It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment. *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016).

"A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis in original) (citation omitted). To survive summary judgment on a failure-to-protect claim, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotation omitted). "The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Id*. The existence of a risk of harm is not based on hindsight but "is a prospective determination of what might happen based upon events that have already occurred." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). Where more than one defendant is alleged to have been deliberately indifferent, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Here, Lee has produced evidence in response to this motion that creates a genuine issue of material fact as to whether Defendants McClain and McNeal failed to protect Lee in violation of the Eighth Amendment. Lee has submitted two Inmate Request Slips that were filed within the first few weeks of his arrival at Fountain. The first, dated April 10, 2021, is directed to the "Deputy Warden," is stamped as received on April 13, 2021, and states:

8

> Warden McClain I 'Cannot' under "NO" Circumstances be placed in general population if returned back to FCC from the Annex because there are still guys over there that was associated with Bobby White and Pritchett that stabbed me last time I was over there and they've been sending threats to me by the guys in trade school saying I owe them for their homeboy but I didn't owe White shit and I don't know or owe these guys. I fear for my life please don't put me back over there just transfer me up North plz!

(Doc. 63 at 17). The second, dated April 11, 2021, is directed to the "Deputy Warden" and "Captain", is stamped received on April 15, 2021, and states:

> Warden McClain I Recently wrote you about the threats I've been getting from guys over there and you know I be coming over there for medical & too see mental health and the other day I was over there and a guy told me I had a $1000.00 on my head and when I come back over there I'm a dead man. I fear for my Life!

(Doc. 63 at 18). Lee also submitted his personal affidavit in response to this motion, affirming the allegations made in his complaint (*Id*. at 11). Lee avers that while discussing the situation in the Annex, Warden McClain "assured [Lee] that he would look further into the situation because he had checked into it when [Lee] first wrote him the letter about the problem.... and told [Lee] that 'if I came back over there to the main facility, that I would not be placed in general population, and that he had me'". (*Id*.). Lee has presented sworn affidavits from two inmates confirming this conversation between Lee and Warden McClain. (*Id*. at 13-16). Lee has pointed to the medical records from January 25, 2022, where Lee told the nurse, "I fear for my life. I don't want to go the general population." (Doc. 62-1 at 95). As to Defendants' assertion that Lee never named a threat from a specific inmate or that he had no validated enemies in the facility, Lee maintains that before being placed in general population on January 25, 2022, he explained to Captain McNeal that:

> he did not know the guys[sic] names as it had been a few years that had passed since the initial attack on Lee, and that the guys had been sending

9

> threats too[sic] Lee through the guys that Lee was assigned with at the annex that attended trade school, and therefore they were on notice that Lee wanted protection, and allegedly reviewed Lee's file and verified that all enemies that Lee had "previously" "had been transferred" away from the facility, but failed to "Investigate" whether or not there were any new and or other enemies associated with the old enemies that were transferred.

(Doc. 63 at 2).

Lastly, as to Defendants' assertion that Lee has not alleged an injury from the attack or evidence of an attack, the record suggests otherwise. Lee has identified medical records which show on January 27, 2022, the day he claims he was attacked, he received a body chart and mental health referral form for placement in protective custody. (See Doc. 62-1 at 234-235). Lee also references two sick call requests related to back pain following the alleged attack. The sick call request dated February 15, 2022, states:

> The lower left side of my back is hurting so bad to the point I can't hardly get out of the bed or walk without wincing from the pain! I previously had a MRI done and was told I had 4 slipped disks, and needed surgery. I was assaulted on 1/27 here and stumped and kicked in my back on the floor. I need pain meds and another brace."

(Doc. 62-1 at 91). The sick call request date March 2, 2022 states, "I was attacked and stomped an kicked in my back repeatidly[sic] by gang bangers." (Doc. 62-1 at 90).

The law is clear that "an official may not escape liability merely by showing that he did not know the claimant was likely to be assaulted or that an assault would be committed by the specific prisoner who eventually committed the assault." *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1583 (11th Cir. 1995) (citing *Farmer*, 511 U.S. at 843). Taking Lee's version of the facts as true, he repeatedly discussed a fear for his safety in general population with Defendants and provided details surrounding the threats (namely linking the threats to persons who were connected to the known assailants

10

from his 2016 assault). Based on the allegations put forth by Lee, a reasonable juror could find that Lee informed the defendant officers of a threat to his safety and that the official could have concluded that a particular threat evidenced a substantial threat of serious harm, rather than the mere possibility. *Marbury v. Warden*, 936 F.3d 1227, 1236-37 (11th Cir. 2019) (discussing when a communicated threat to an officer is sufficient to impute knowledge of a risk of harm to an inmate). Thus, there remain genuine issues of material facts and credibility determinations as to whether Defendants were aware of a substantial risk of serious harm based on Lee's alleged notifications to them. At this stage of the action, it is not the function of the reviewing court to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252.

Because Lee has presented evidence that creates a factual dispute, the Court cannot enter judgment as a matter of law on his deliberate indifference claim. Therefore, Defendants' motion for summary judgment is denied as to the deliberate indifference claim put forth by Lee.

**B. Retaliation**

Pursuant to the First Amendment, a prison official may not retaliate against an inmate for exercising the right of free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist,* 833 F.2d 639,644 (7th Cir.1987). "[T]o succeed on a ... claim of retaliation for speech, the plaintiff must show that his speech was a

11

'substantial' or 'motivating' factor in the allegedly retaliatory decision." *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir.1998).

It is clear based on these guidelines that Defendants are entitled to summary judgment on Lee's retaliation claims. Lee has failed to carry his burden of pleading facts from which the Court can infer a retaliatory motive on the part of Defendants. Here, Lee has done nothing more than make the conclusory allegation that his placement in general population and holding in the segregation unit was motivated by his filing of lawsuits against the state prisons and its correctional officers. Indeed, he pleads facts which belie his claim of retaliation by acknowledging that he was transferred to Fountain's main facility and general population due to a transfer refusal. (*See* Doc. 63 at 11; Doc. 48-2). Furthermore, he pleads that he requested to be placed in protective custody instead of Fountain's general population. As to his continued holding in the segregation unit rather than being transferred from Fountain, Lee has made no specific allegations against Defendants McClain or McNeal and has further failed to refute Defendants' claim that neither Defendant has the authority to reclassify him or assign him to another facility. (Docs. 48-1; 48-2; 48-3).

Accordingly, Lee has failed to establish a claim for retaliation against these Defendants. Therefore, Defendants' motion for summary judgment as to the retaliation claim is granted.

## **CONCLUSION**

For the reasons stated above, the motion for summary judgment filed by Defendants McClain and McNeal is **GRANTED** as to Plaintiff Lee's First Amendment retaliation claim and that claim is dismissed. However, Defendants' motion for summary judgment is **DENIED** as to Plaintiff Lee's Eighth Amendment deliberate indifference claim asserted against Defendants McClain and McNeal.

The Clerk of Court is **DIRECTED** to refer this case to the Magistrate Judge for entry of a scheduling order.

**DONE** and **ORDERED** this 25th day of August 2023.

       s/ Kristi K. DuBose
      KRISTI K. DuBOSE
      UNITED STATES DISTRICT JUDGE