IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RASHAD C. LEE,<br><br>    *Plaintiff*<br>v.<br><br>CYNTHIA STEWART, WARDEN<br>REOSHA BUTLER, WARDEN<br>ANTONIO MCCLAIN, CAPTAIN<br>JOHNNY MCNEAL, SGT. BRUCH FRENCH.<br><br>    *Defendants*. | Civil Action No. 1:22-cv-50-KD-MU<br><br>Jury Trial Demanded |

**SECOND AMENDED COMPLAINT**

  1. While incarcerated at Fontain Correctional Facility ("Fountain"), in general population, Plaintiff Rashad Lee ("Plaintiff Lee") was attacked on the morning of January 27, 2022 and beaten by two prisoners who kicked him and stomped on his back. Defendants, prison facility administrators and correctional officers, are responsible for failing to protect Plaintiff Lee from this assault after he pleaded with them for his life and begged not to be placed in general population.

  2. Plaintiff Lee continued to advocate for his civil rights and engaged in protected activity by informing Defendants he intended to file a lawsuit against them, filing grievances against them, and filed the Complaint initiating this action against Fountian correctional officials on February 4, 2022. Defendants retaliated against Plaintiff Lee by, on January 25, 2022, writing him up for a bogus disciplinary charge, and, on March 18, 2022, changing Plaintiff Lee's custody status from a minimum-security level to a medium security level without justification or proper procedures.

1

3. This Complaint, in addition to the Eighth Amendment claim against Defendants McClain and McNeal, adds an additional claim for First Amendment retaliation against Defendants McClain, McNeal, and against three additional defendants, Defendants French, Stewart, and Butler. Plaintiff Lee alleges as follows:

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343 because this action arises under the Constitution and laws of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## JURY DEMAND

6. Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the U.S. Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

7. **Plaintiff Rashad Lee** is currently incarcerated at Elmore Correctional Facility. Plaintiff Lee has developed substantial knowledge of the law, helps incarcerated individuals access legal resources, and advocates for himself against the unconstitutional conditions that he suffers and is exposed to within Alabama Department of Corrections ("ADOC") facilities. At Fountain, in January 2022, Plaintiff Lee suffered an inmate-on-inmate assault due to defendants' failure to heed his requests for help and protect him. Plaintiff Lee has since suffered retaliation for seeking to advocate for his rights. Defendant Lee is a resident of Alabama.

8. **Defendant Cynthia Stewart** was an ADOC Associate Commissioner at all relevant times. Defendant Stewart was responsible for monitoring and reviewing the day-to-day operations of correctional institutions in her assigned area. Her duties included supervising the

2

wardens of the prisons in her area and ensuring effective and safe daily operations at the facilities. Defendant Stewart was also responsible for serving as the liaison between wardens and the ADOC executive leadership. Defendant Stewart is a resident of Alabama.

9. **Defendant Warden Reosha Butler** was a Warden of Fountain at all relevant times. As warden, Defendant Butler was responsible for the daily functioning and administration of Fountain, including the safe, secure, and humane treatment of all prisoners incarcerated there. At all relevant times Defendant Butler acted under color of state law. Defendant Butler is a resident of Alabama.

10. **Defendant Warden Antonio McClain** was a Warden of Fountain at all relevant times. As warden, Defendant McClain was responsible for the daily functioning and administration of Fountain, including the safe, secure, and humane treatment of all prisoners incarcerated there. At all relevant times Defendant McClain acted under color of state law. Defendant McClain is a resident of Alabama.

11. **Defendant Johnny McNeal** is a Captain employed at Fountain. At all relevant times, Defendant McNeal acted under color of state law. Defendant McNeal is a resident of Alabama.

12. **Defendant Sgt. Bruce French** is a Sergeant employed at Fountain. At all relevant times, Defendant French acted under color of state law. Defendant French is a resident of Alabama.

## FACTS

**A. Plaintiff Lee's Prior Incarceration at Fountain**

13. On December 19, 2016, Plaintiff Lee filed *Lee v. Peterson, et al.*, 1:16-cv-625 (S.D. Ala), alleging that officer to protect him from an inmate assault at the hands of prisoners Bobby White and Randy Pritchard on October 27, 2016. Plaintiff Lee notified correctional officials with

days of his arrival, in December of 2015, that he faced an imminent threat to his safety. Nonetheless, officers failed to take steps to transfer him or otherwise protect him. On October 27, 2016, two prisoners beat and stabbed him while other prisoners stole his personal property.

**B. The January 25, 2022 assault on Plaintiff Lee**

14. On March 23, 2021, Plaintiff Lee was transferred to Foutain from Bibb Correctional Facility. Plaintiff Lee was placed in a dormitory with a guy called "Red" and Plaintiff Lee observed that Red hung out with prisoners who had been involved in attacking him previously in 2016. On the night of March 23, 2021, Plaintiff Lee and Red stayed up all night watching each other. The next morning, Plaintiff Lee notified Officer Walker about his potential enemy. Officer Walker in turn notified Lt. Smith and Plaintiff Lee was placed in protective custody. Captain Knight then transferred Plaintiff Lee to the M dormitory, the Annex.

15. On April 10, 2021, Plaintiff Lee submitted an inmate grievance request slip to Warden McClain that states:

> Warden McClain I 'Cannot' under 'NO' Circumstances be placed in general population if returned back to FCC from the Annex because there are still guys over there that are associated with Bobby White and Pritchett that stabbed me last time I was over there and they've been sending threats to me by the guys in trade school saying I owe them for their homeboy but I didn't owe White shit and I don't' know or owe these guys. I fear for life please don't put me back over there just transfer

16. The second inmate grievance, directed to a "Deputy Warden" and "Captain," is dated April 11, 2021, and states:

> Warden McClain I Recently wrote you about the threats I've been getting from guys over there and you know I be coming over there for medical & to see mental health and the other day I was over there and told a guy told me I had a $1,000.00 on my head and when I come back over there I'm a dead man. I fear for my Life!

17. In addition, in June 2021, while housed in Fountain's Annex, Plaintiff Lee told Defendant McClain to come see him and told him, "I need a transfer [away from Fountain]. I don't

4

like it down here. Last time I was down here I was stabbed, robbed, and had to be transported by ambulance to the emergency room."

18. Plaintiff Lee stated that he had previously sued the prison's administration because he repeatedly warned them that other inmates had threatened to stab him and they refused to act, resulting in two prisoners stabbing him while others robbed and beat him. Plaintiff Lee also told Defendant McClain that he personally knew some of the guys who had been involved in attacking him previously were still in general population as Plaintiff Lee had seen them when he was escorted over to the main facility to see the doctor. Finally, Plaintiff Lee also informed Defendant McClain that when he was first transferred to Fountain, on March 23, 2021, Plaintiff Lee had stayed up all night watching Red, a man who is associated with the prisoners who stabbed him.

19. Defendant McClain agreed with Plaintiff Lee that if Plaintiff Lee was sent back to the main facility and placed in general population, Plaintiff Lee "would have problems."

20. On January 25, 2022, Plaintiff Rashad Lee was removed from the Annex back to Fountain's general population housing in the main facility.

21. Upon arrival, Nurse Newton performed a body chart on Plaintiff Lee. Plaintiff Lee stated to Nurse Newton: "I am in fear for thy life, and am afraid to go to general population out of tear of being killed because last time I was here I was stabbed in my sleep, robbed, and had to be transported to the emergency room by ambulance, because inmates robbed and assaulted me."

22. Plaintiff Lee asked to see Defendant McClain, but Defendant McClain would not come see Plaintiff Lee but sent a message by Defendant McNeal, stating "he had no talk for Plaintiff Lee."

23. Plaintiff Lee begged Defendant McNeal not to send him to general population because he had been stabbed and robbed the last time he was at Fountain. Plaintiff Lee stated that

5

he was in fear for his life and requested to be placed in protective custody. Captain McNeal just laughed and told him "to get his shit and go to population."

24.     Plaintiff Lee reluctantly went as ordered and was placed in the housing dormitory controlled by the Gangsta Disciple gang. For two nights, Plaintiff Lee had to sleep on the floor of the television room because he was non-affiliated with a gang and Gangsta Disciples would not let him sleep in his assigned bed.

25.     On the morning of the third day, Plaintiff Lee went to use the bathroom and was assaulted by two prisoners in the bathroom saying. "where's the money you owe?" They kicked Plaintiff Lee in the sides and stomped him in his back until they got tired. Plaintiff Lee got up, showered, waited to go see mental health, and told them what had just transpired. Mental health called Lt. Smith and Plaintiff Lee requested to be put in protective custody.

**C.     Plaintiff Lee faced ongoing threats while housed in protective custody at fountain.**

26.     After he was assaulted, Plaintiff Lee was placed in protective custody. In protective custody, prisoners routinely set fire to the sheets or paper bags in their cells because the administration permits smoking there to ease the tension of prisoners. There are no fire sprinklers in any of the cells, nor any fire extinguishers to put out the fires, only fans spaced every thirty to forty feet on the tier. Because there are bars and no doors, there was no way for Plaintiff Lee to shield himself from smoke. One night a disturbed prisoner burned his sheet and the smoke was so intense and thick that Plaintiff Lee's cell filled with smoke to the point where he had to lay on the floor gasping for air and not able to breath due to his chronic asthma. This same thing occurred in the Annex a few times because there are no sprinklers or extinguishers in the Annex.

27.     Additionally, Plaintiff Lee observed that prisoners from the general population area worked as runners in the protective housing unit, bringing goods to prisoners. This presented an

opportunity for Plaintiff Lee's enemies in general population to access and harm him within the protective custody unit.

28.     Alarmed by this, Plaintiff Lee wrote to Defendant McClain, requesting that he initiate a transfer and transfer Plaintiff Lee away from Fountain for his protection.

29.     On February 16, 2022, an officer called for identification cards to purchase items from the canteen on behalf of prisoners who had sufficient funds. Several hours later, Plaintiff Lee noticed that $125.00 had been spent from his account by the runner using his card at the canteen. Plaintiff Lee complained about this to the supervising officer. The next day that officer was removed from the unit and assigned to another post.

30.     On or around February 17, 2022 Defendant McClain told the newly assigned officer, Officer Kemp, not to allow prisoners in segregation to purchase food from the canteen. In addition, because Plaintiff Lee had filed a Complaint against him, Defendant McClain, told Officer Kemp to tell the segregation unit that Plaintiff Lee was the reason that the unit could not buy items from the commissary.

31.     The segregation unit runner repeated Defendant McClain's order from cell to cell. This placed a target on Plaintiff Lee's bag as Defendant McClain collectively punished the segregation unit by taking away their access to the canteen and then identified Plaintiff Lee as the reason why. Fountain is a dangerous facility and this increased the threat of violence against Plaintiff Lee, who just recently been assaulted a few weeks prior.

32.     The next day, the whole tier blamed Plaintiff Lee as the reason why they were hungry and threatened that they were going to "whack" Plaintiff Lee, i.e., assault him with sticks, metal bars, or throw feces and urine on him as he went to the shower. The segregation unit runner also told Plaintiff Lee that one prisoner told him that he planned to squirt gasoline in Plaintiff Lee's

7

cell, through the bars, and light Plaintiff Lee up. The runner told Plaintiff Lee to watch himself. Plaintiff Lee did not sleep for days out of fear for the severity of the situation.

33. In early to mid February, Plaintiff Lee faced a real and imminent threat of danger and requested that he be emergency transferred to another facility. Defendant McClain stated that he would begin initiating an emergency transfer request. Despite this, Defendant McClain failed to do so, leaving Plaintiff Lee at serious risk of harm until Plaintiff Lee was transferred on March 18, 2022.

        D.        **Defendant French charged Plaintiff Lee with a bogus disciplinary violation**

34. On January 25, 2022, Plaintiff Lee told Defendant McNeal that he intended to sue both him and Defendant Warden McClain for violating his constitutional rights by failing to protect him. Plaintiff Lee also complained to them about the threat presented from fires burning in cells in the prison.

35. On January 25, 2022, Defendant Sgt. Bruce French wrote Plaintiff Lee up for a disciplinary violation. Defendant French alleged that Plaintiff Lee violated ADOC AR 510 conspiracy to commit a violation of rules, contending that Plaintiff Lee was conspiring to escape.

36. Upon information and belief, Defendant French wrote the disciplinary violation either at the behest of Defendants McClain and McNeal or, alternatively, on his accord. These defendants possessed retaliatory animus against Plaintiff Lee for threatening to file a lawsuit against them.

37. Plaintiff Lee was served a copy of the disciplinary on January 31, 2022. At the time, Plaintiff Lee's custody level was minimum-security.

38. Prison officials never presented testimony from the arresting officer at a disciplinary hearing to support the disciplinary infraction.

39. On February 23, 2022, Plaintiff Lee was served notice of a pending reclassification hearing. On February 23, 2022, Defendant McClain rejected the disciplinary infraction as being invalid on due process grounds. Therefore, the pending disciplinary infraction was voided and, the pending reclassification could not go forward.

40. ADOC AR 403 mandates that a disciplinary report be served on a prisoner within ten working days after a violation is reported and that a hearing is held within ten working days from the serving date of the disciplinary report.

**E. Defendants Stewart and Butler retaliated against Plaintiff Lee by changing his custody level from minimum to medium security without justification or affording him a reclassification hearing**

41. Plaintiff filed his pro se Complaint on February 5, 2022, naming McClain and McNeal as liable for deliberate indifference and failure to protect him and retaliation and cruel and unusual punishment.

42. A few days after Plaintiff Lee filed his February 5, 2022, Defendant Reosha Butler called Plaintiff Lee into her office and told Plaintiff Lee, referring to his recently filed pro se complaint, that he had "gone about it the wrong away."

43. Plaintiff Lee told Defendant Butler that he needed to be transferred away from Fountain because he continued to fear for his safety. In addition, Plaintiff Lee told Defendant Butler that it was not appropriate to continue housing him in protective custody. Instead, he should be transferred to a minimum-security work release camp where he could be housed without fear for his safety and without needing to spend twenty-three hours a day in a single cell.

44. During his time in protective custody, Plaintiff Lee never saw, and his housing assignment was never reviewed by, a segregation board.

45. Throughout February and into March, Plaintiff Lee continued to advocate for his rights. Plaintiff Lee wrote several grievances and complaints, arguing that the protective custody

he was confined to was not regulated by the Fire Marshal. The area often filled with smoke from prisoners lighting fires and Plaintiff Lee suffers from asthma.

46. On March 18, 2022, Plaintiff Lee was transported away from Fountain to Kilby Correctional Facility. Plaintiff Lee had been requesting to be transported to a minimum out community work center and to be closer to home for family ties in the Montgomery, Alabama area. The same day that Plaintiff Lee was transported away, ADOC officials changed Plaintiff Lee's custody level from minimum security to medium security without justification or first providing a reclassification hearing.

47. Rather than attempting to transfer Plaintiff Lee for his safety, Defendant Butler kept Plaintiff Lee in protective custody housing for approximately fifty-six days. On March 18, 2022, Defendant Cynthia Stewart, an ADOC Associate Commissioner and former Warden, saw Plaintiff Lee in protective custody.

48. Defendant Stewart became concerned that Plaintiff Lee was housed at Fountain. Defendant Stewart discussed with Defendant Butler, in front of Plaintiff Lee, why was Plaintiff Lee housed at Fountain. She said that Plaintiff Lee had previously sued them and beat them in a prior lawsuit for failing to protect him. She also said that "because of the prior lawsuit," Plaintiff Lee needed to be transferred away from Fountain immediately.

49. This last statement supports a reasonable inference that it was obvious to Defendant Stewart that Plaintiff Lee should not have been housed at Fountain because prior assailants who attacked Plaintiff Lee or their allies might still be housed at Fountain and a substantial risk of serious harm to Plaintiff Lee.

50. The same day, March 18, 2022, Plaintiff Lee was transferred from Fountain to Kilby. When Plaintiff Lee left Fountain his security custody was minimum security. The driver of

the transport van received a text message while en route to Kilby notifying him of the increase in custody level. By the time Plaintiff Lee arrived at Kilby his custody level had been increased to medium security.

51. Decisions to transfer a prisoner and house him in a different facility and to change a prisoner's security classification level are initiated at the facility level before being approved by the Central Records and Classification Division in Montgomery.

52. Wardens at a facility possess the authority to both initiate a prisoner's transfer to a different facility and change a prisoner's security classification level.

53. Often the Central Records and Classification Division rubberstamps and does not provide meaningful review to a Warden's decision to transfer a prisoner to a different facility and/or change a prisoner's security classification level.

54. The sudden reclassification of Plaintiff Lee, despite that no reclassification hearing was pending, on March 18, 2022, the day Defendants Stewart and Butler ordered an immediate same-day transfer, supports a reasonable inference that Defendants Stewart and Butler ordered Plaintiff Lee to be reclassified.

55. Before he departed Fountain, Plaintiff Lee was eligible to be housed at a minimum-security work release camp. This would have allowed Plaintiff Lee to participate in a work-release program, where he would be leased to a private business for labor. This would have enabled Plaintiff Lee to work in the community alongside non-incarcerated coworkers, without supervision by prison staff.

56. The work-release program offered another advantage to Plaintiff Lee as well. Housing at a minimum-security work release camp would have allowed Plaintiff Lee to escape the horrifyingly violent conditions currently plaguing Alabama's medium- and maximum-security

facilities. Instead, due to his security level increase, Plaintiff Lee was eventually transferred to Elmore, a medium security facility.

57. While incarcerated at Elmore, Plaintiff Lee observes fights every day and regularly observes bloody assaults. He has personally witnessed at least two murders in the past two years. In addition, there is rampant drug use at the facility; the overwhelming majority of prisoners in the housing dormitories are high everyday and prisoners suffer drug overdoses on a daily basis at the facility.

58. In addition, while housed at Elmore, Plaintiff Lee has suffered from asthma attacks. The officers allow the prisoners to cook by lighting open fires in metal containers inside the housing dormitories, creating a dangerous fire and smoke hazard within the confined space. This is especially dangerous for Plaintiff Lee, who is asthmatic, and must often wear double face masks to attempt to protect his lungs. These incidents have caused Plaintiff Lee to remain in fear for his life on a daily basis and subjected him to increased trauma and stress.

59. Plaintiff Lee also suffered permanent injuries from his January 27, 2022 assault that continue to affect him. Plaintiff Lee slept on a floor for two nights while anticipating an attack, and then he suffered an attack where he was beaten on a bathroom floor by two prisoners who kicked him in his sides and stomped on him until they were tired. Plaintiff Lee sustained herniated discs, and, as a result, he is required to permanently wear a back brace, including sleeping in the brace. Plaintiff Lee is limited in his ability to lean over, he cannot climb to a top bunk, he cannot lift heavy weights, he is in constant pain, and he is unable to walk fast.

60. Documenting these injuries, on February 15, 2022, Plaintiff Lee submitted a sick call request stating:

> The lower left side of my back is hurting so bade to the point I can't hardly get out of the bed or walk without wincing from the pain! I previously had a MRI done and

was told I had 4 slipped disks, and needed surgery. I was assaulted on 1/27 here and stumped and kicked in my back on the floor. I need pains and another brace.

61. The sick call request dated March 2, 2022 states: "I was attacked and stomped an kicked in my back repeatedly[sic] by gangbangers.

## COUNT I – Eighth Amendment
## Failure to Protect
## Defendants McClain and McNeal

62. Plaintiff incorporates the allegations in paragraphs ¶¶ 14-30, ¶¶ 59-61.

63. Defendants McClain and McNeal were deliberately indifferent to the substantial risk of serious harm that Plaintiff Lee faced from assailants in the Gangsta Disciple dormitory.

64. Defendants McClain and McNeal were on notice that Plaintiff Lee faced a threat to his life from Plaintiff Lee's April 10, 2021 and April 11, 2021 prisoner request slips directed to them, his June 2021 conversation with Defendant McClain, and his January 25, 2022, conversation with Defenant McNeal begging them not to place him in general population housing at Fountain because he feared for his life. In addition, Plaintiff Lee told a nurse on January 25, 2022, "I fear for my life. I don't want to go the general population."

65. Defendants McClain and McNeal failed to take any corrective measures within their authority to protect Plaintiff Lee, including failing to house him in protective custody, the Annex, or transfer him to a different facility, rather than place him in general population housing at Fountain.

66. Defendants' denial of protection to Plaintiff Lee reflects their malice, recklessness, and callous indifference to Plaintiff's clearly established rights under the Eighth Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

## COUNT II – First Amendment Retaliation
## Defendants McClain, McNeal, French, Stweart, and Butler

13

67. Plaintiff incorporates the allegations in paragraphs ¶¶ 26-59

68. Defendant McClain violated the First Amendment and is liable under 42 U.S.C. § 1983 for retaliating against Plaintiff Lee by denying him an emergency transfer to another facility in February 2022. ¶¶ 26-33. Defendant McClain was placed on notice in early to mid-February that Plaintiff Lee faced a serious risk of harm while he remained inside the protective unit. Indeed, Defendant McClain exacerbated the threat by targeting Plaintiff Lee by collectively punishing the segregation unit and blaming it on Plaintiff Lee.

69. Defendants McClain, McNeal, and French violated the First Amendment and are liable under 42 U.S.C. § 1983 for retaliating against Plaintiff Council by writing him up, or causing him to be written up, for a bogus disciplinary charge on January 25, 2022. ¶¶ 34-40.

70. Defendants wrote Plaintiff Lee up for a disciplinary on January 25, 2022, after he engaged in protected activity by telling Defendants Warden McClain and Captain McNeal that he intended to file a lawsuit against them for failing to protect him from the risk of assault by other prisoners and complained to them about the smoke from ongoing fires in the facility. In retaliation, Defendant Sgt. French wrote Plaintiff Lee up for a bogus disciplinary charge of threatening to escape the facility. Reflecting the lack of credibility of the disciplinary charge, the prison administrators never presented testimony from the arresting officer regarding the violation and Defendant McClain later voided the disciplinary charge on due process grounds.

71. Defendant French either retaliated against Plaintiff Lee to chill his protected activity out of retaliatory animus or alternatively acted as a cat's paw and filed the disciplinary charge at the behest of Defendants McClain and/or McNeal.

72. After Defendants French, McClain, and McNeal were aware on January 25, 2022, that Plaintiff Lee would file a grievance, complaint, or legal action against them for transferring

him to general population, where he faced a serious risk of harm of attack, Defendants sought to retaliate against Plaintiff Lee.

73. Defendants Butler is liable under 42 U.S.C. § 1983 for retaliating against Plaintiff Lee for filing lawsuits against Fountain correctional officers by keeping Plaintiff Lee placed in protective custody without reviewing his placement there by a segregation board and or transferring him to a different facility for his own protection. ¶¶ 41-58.

74. Defendants Stewart and Butler violated the First Amendment and are liable under 42 U.S.C. § 1983 for retaliating against Plaintiff Lee for filing a February 5, 2022 lawsuit against Fountain correctional officers by ordering his custody level to be changed from minimum-security to medium-security without first finding him liable for a disciplinary violation and providing him with a reclassification hearing. ¶¶ 41-58.

75. Defendant Butler's statement to Plaintiff Lee, chastising him for engaging in protected activity by filing a lawsuit and saying he went about it the "wrong way," reflects retaliatory animus.

**76.** The retaliation against Plaintiff Lee by Defendants reflects malice and a reckless and callous indifference to his clearly established rights under the First Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

### DAMAGES

77. The Defendants' tortious conduct, as alleged herein above, was a direct, proximate, and producing cause of the violation of Plaintiff Lee's rights under the U.S. Constitution and under Alabama law, and of the following damages:

    a. damages resulting from all harm suffered by Plaintiff Lee, including but not limited to:

     i. conscious physical pain and suffering;

    ii. physical injury and impairment;

    iii. mental anguish and anxiety;

    iv. loss of liberty;

  b. punitive damages;

  c. nominal damages;

  d. any and all other damages, which will be more fully proven at trial, including for the intangible but concrete harms proximately caused by the violations of Plaintiff Council's First and Eighth Amendment rights;

  e. all other forms of relief provided by law together with interest from the date of injury until paid, plus costs of these proceedings.

78. All defendants are liable jointly, severally, and *in solido* as a result of their participation in the conduct giving rise to these allegations.

WHEREFORE, the Plaintiff prays that after due proceedings in this Court, judgment be entered in favor of Plaintiff and against Defendants, jointly, severally, and *in solido*, for all such damages as are reasonable under the premises set forth herein, together with legal interest thereon from the date of judicial demand until paid; for all costs of this proceeding, as well as penalties and attorneys' fees to the extent applicable; and for all other relief to which Plaintiff may be entitled.

Respectfully submitted this 23rd day of February, 2024.

          /s/ *Andrew Menefee*
          Andrew Menefee
          **MENEFEE LAW**
          Alabama Bar No. 1529W23S
          1250 Connecticut Ave NW
          Ste. 700

          Washington D.C., 20036
          202-381-0143
          amenefee@menefee-law.com
          *Attorney for Plaintiff*